[PHILADELPHIA, JANUARY 31, 1838.]

## SMITH *against* DREER.

### IN ERROR.

1. A witness cannot be interrogated by the party calling him, as to irrelative matters although on a previous cross-examination he has been questioned as to such matter, and given testimony.
2. On the trial of an action for work and labour done, in furnishing gas fittings for the defendant's house, a witness produced by the defendant [*155] having given evidence to *show that the work was badly done, was asked in his cross-examination whether the plaintiff had not made the gas fittings at the Exchange, and certain other public places: *held*, that the defendant's counsel could not ask the witness whether the gas fittings made by the plaintiff for those places were not so defective as to render it necessary to remove them.

ERROR to the District Court for the City and County of Philadelphia, to remove the record of an action on the case brought by Francis Smith against Frederick Dreer.

The plaintiff, who was a gas-fitter by trade, brought this action to recover the amount of a bill for work and labour done, and materials furnished, for an establishment belonging to the defendant.

On the trial before Judge Stroud, the plaintiff produced his book of original entries, which was duly proved and admitted in evidence.

The defendant rested his defence upon the ground that the work performed by the plaintiff, was not executed in a workmanlike manner; and to maintain the issue on his part, produced witnesses who testified as to the general state of the work; among others

Thomas Nicholson was produced, sworn and examined by the defendant, and deposed as follows: "I am inspector of the gas company here; have been so since November a year: was called upon to inspect that work at the museum: the work was examined in the usual way: being called on frequently, and having a great deal to do, I could not examine them as well as I should. There was considerable difficulty in stopping the leaks. I was not aware that there was a particle of waste in the gas. I had scarcely any opportunity of judging whether the work was good.

Being cross-examined by the plaintiff's counsel, he said: "Smith made the gas-fittings at the Exchange, and American Coffee-house, Florence's, Bremond's, and other places."

The defendant's counsel, in order to show the incompetency and want of skill of the plaintiff in his business generally as a gas-fitter, asked the witness whether the gas-fittings, which in his

(Smith *v.* Dreer.)

cross-examination by the plaintiff's counsel, he had said to have been made by the plaintiff at the Exchange, American Coffee-house, Florence's, Bremond's, and other places, answered the purpose for which they were intended, or whether they were so defective as to render it necessary to remove them. The plaintiff's counsel objected, and *the judge refused to allow the witness to be so examined. To which decision of [*156] the Court the defendant's counsel excepted.

The defendant gave in evidence the bills rendered by the gas company for gas consumed by him from the 15th of February to 1st December, 1836.

The defendant then examined John Pearce, who testified: "I was called on in July, 1836, to examine this work. The gas was plainly to be smelt; the whole place was fumigated: the defendant wanted the waste of gas and unpleasant smell prevented. We put the work into a state of thorough repair. I have delivered other bills besides these, (bills to the amount of $126 40, being presented,) for the work. I should not think the plaintiff capable of putting up work. I have seen enough of his work to judge of it: answering by his work I've had to take down, he is an incompetent workman as a gas-fitter; he makes as good *tubing* as ever I saw. The work at Mr. Dreer's was done in an unworkmanlike manner. The burners we have put up consume 2 3-4 feet per hour, those put up by the plaintiff burnt 5 feet per hour, 1 1-4 foot difference per hour in each burner. There were 43 burners changed. The meter was tried before we began and after we finished. Burners will not let more gas escape in six months than at first."

The defendant then examined John Pearce, Junior, who said: "I was present at the examination of the meter before and after the completion of the repairs. The consumption *after* was about 100 feet per evening less than that *before.*"

The evidence being closed, the Court were asked by the defendant's counsel to charge the jury, that

"If the jury believe that the difference between the consumption of gas by each burner after the repairs of the tubes, &c. from what it was before, was 1 1-4 foot per hour, the defendant is entitled to defalk from the plaintiff's bill, the amount of gas wasted according to his calculation, until a reasonable time after notice to Smith to repair the work."

Upon which the judge charged the jury as follows:

"Upon this point the jury may take the evidence of Mr. Pearce in regard to the waste of 1 1-4 foot per hour, and compare it with the evidence furnished by the gas bills produced by the defendant. Both relate to the same subject—the consumption of gas, as shown by the meter. It will appear from the gas bills according

(Smith *v.* Dreer.)

to my calculation (but the jury will make calculations for themselves) that the consumption of gas by the meter in the first month and a half *after the works were put in operation [*157] was more than 11,000 feet per month—7,900 in April, 8000 in May, and that since Mr. Pearce's repairs have been made in September, October and November last, it averages upwards of 9000 feet.    The jury, after comparing this evidence, if they believed that Mr. Pearce's calculation is to be preferred to the actual results of the meter as shown by the gas bills, may make such deduction from the plaintiff's demand, as this evidence in their judgment warrants.    That the jury can give such a preference to Mr. Pearce's judgment, I can hardly consider possible; but they may do so if their opinion differs from mine on the relative value of the two kinds of evidence."

The defendant's counsel excepted to this charge, and the jury having found for the plaintiff, a writ of error was taken, and the following errors assigned.

" 1.  The Court erred in rejecting the testimony offered as mentioned in the first bill of exceptions.

2.  The Court erred in not answering the point upon which they were requested to charge the jury.

3.  The Court erred in charging the jury that they could hardly ' consider it possible' that ' Pearce's judgment should be preferred' to the gas bills, without likewise charging that it was in evidence from other sources, that there was a waste of gas, and that the increase of consumption after Pearce's repairs, might have been and *was* occasioned by additional burners, the existence of such being in evidence.

4.  The charge of the Court was against the law and the evidence."

Mr. *Guillou* and Mr. *Perkins,* for the plaintiff in error, cited *M'Culloch* v. *Wallace,* (8 Serg. & Rawle, 181).

Mr. *C. Ingersoll, contra,* cited, *Griffith* v. *Eshelman,* (4 Watts, 51) ; *Stringer* v. *Young,* (3 Peters, 337).

Per Curiam.—The principle of *Griffith* v. *Eshleman,* that cross-examination to irrelevant matter shall not bring it into the issue, is decisive of the point here.    The defendant might have excluded the evidence of the plaintiff's agency in putting up gas-fittings at the Exchange and other places; and prejudice from his omission to do so, can certainly not entitle him to draw the inquiry still further from its course,    The issue is, whether the particular work for whose price suit is brought, has been done in a workmanlike manner ; and the plaintiff's engagements on the

(Flitcraft *v.* Jenks.)

one hand, or his fulfilment of them on the other, cannot be suffered to affect it.    *The other exceptions are to opinions  [*158]
upon weight of evidence, and not to a direction in matter
of law; and they consequently cannot sustain a writ of error.

Judgment affirmed.